IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


CEDRIC BUCKLON,

    Plaintiff,

vs.	Case No. 5:04cv6-LAC/WCS

BERRY RHODES,

    Defendant.

_____/


## REPORT AND RECOMMENDATION

Defendant filed a special report, doc. 26, converted to a motion for summary judgment, doc. 27,[1] and Plaintiff was advised of his obligation to respond in accordance with Rule 56.  Doc. 28.  Plaintiff has filed a response, doc. 33, and the motion is now ready for a ruling.

**Allegations of the amended complaint, doc. 14**

Plaintiff alleged that while housed at Santa Rosa Correctional Institution in 2001, he was to take the examination to become a certified research assistant.  However,

---

[1] The special report is docketed as doc. 26 and is docketed as a motion for summary judgment as doc. 27.

during that process Plaintiff had to be transferred away from the institution for a period of time.  When Plaintiff returned to Santa Rosa C.I., the librarian assigned Plaintiff back to the law library and told Plaintiff to "start studying for the test in late" January."  Doc. 14, p. 7.  Plaintiff took the test, passing the first part, but failing the second part.  *Id.*, at 9.  Defendant Rhodes first told Plaintiff that he could retake the second part of the test since Plaintiff had been gone for some ten months.  However, a short time later Plaintiff was advised by the librarian, Mr. Raines, that Defendant Rhodes directed Plaintiff to be assigned to the general library instead of the law library and that Plaintiff would not be permitted to retake the test.  *Id.*

Plaintiff claims that another inmate was permitted to re-take the second part of the test after failing that part the first time.  *Id.*, at 10-11.  Plaintiff asserts that the other inmate was Caucasian, that Plaintiff is African American, and that the reason Plaintiff is not permitted to retake the test is due to racial discrimination.  *Id.*, at 13.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)(citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences are resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant and unrebutted Rule 56(e) evidence**[2]

Defendant Rhodes is the Training and Development Specialist in the Office of Classification and Programs.  Doc. 26, ex. D.[3]  Defendant is responsible for developing

---

[2] Plaintiff filed a response, doc. 33, but other than a one-page document (a copy of inmate management plan & performance results), Plaintiff did not submit any Rule 56 evidence in opposition to summary judgment.  Thus, Defendant's evidence is unrebutted.

[3] As only Defendant submitted exhibits (Plaintiff submitted only the one page as noted above), all references to exhibits are to those attached to Defendant's special

the training materials used to prepare inmates to work as inmate law clerks, monitoring law clerk staffing levels, selecting inmate to attend law clerk certification seminars, conducting the seminars, administering the certification exams, and monitoring inmate law clerks. *Id.*

While Plaintiff was incarcerated at Apalachee Correctional Institution, he was assigned a job as an orderly in the library. Ex. B. On December 6, 2000, Plaintiff was assigned to work as a law clerk and, upon transfer to Santa Rosa Correctional Institution in September of 2001, Plaintiff retained that job. Ex. B. Plaintiff was transferred to Santa Rosa Correctional Institution "to attend an inmate law clerk certification seminar beginning on September 24, and scheduled to end October 5, 2001." Ex. D. On October 3rd, just prior to the scheduled conclusion of the law clerk training seminar, Plaintiff was transferred away from the institution for medical and legal reasons. Exhibits C, D.

Plaintiff returned to Santa Rosa C.I. on August 20, 2002, and on August 28th, was assigned as a clerk in the general library. Ex. B. However, Plaintiff was again transferred away from Santa Rosa on October 22, 2002, and then returned on November 5, 2002. Exhibits B, D. Plaintiff returned to his job as a clerk in the library. Ex. B.

Plaintiff requested permission to take the final examination and, assuring Defendant Rhodes that he was prepared to take the exam, Defendant consented. Ex. D. On January 17, 2003, Plaintiff was given the examination by Defendant Rhodes. *Id.* Defendant gave Plaintiff instructions, advising that he had "up to three and one-half

---

report.

hours within which to complete the examination." *Id.* Defendant also told Plaintiff "that the test was 'open book' and that he could refer to any book or publication contained in the law library collection in the process of taking the test." *Id.* Plaintiff took the examination and went to the law library to begin the test. *Id.* Within forty-five minutes, Plaintiff returned, handed Defendant Rhodes the test, and said he was finished. *Id.* Defendant "graded the test and determined he failed to score the required minimum 80 points." *Id.*

Plaintiff asked for another chance and assured Defendant Rhodes "he would work diligently and study hard to prepare if given a second chance." *Id.* Defendant "consented to give him another opportunity at a later date." *Id.* Upon leaving the office, however, Plaintiff did not "return to his assigned duties in the law library," but went instead to "the general library and began to visit with inmates." *Id.* Defendant Rhodes watched Plaintiff "for a substantial time while he remained in the general library." *Id.* Plaintiff was talking and socializing, and at one point, "was rude toward the librarian" while Defendant was watching. *Id.* Plaintiff "did not return to the law library to work." *Id.* Based on these observations, Defendant Rhodes changed his "mind and decided not to re-test" Plaintiff. *Id.* Defendant explained this to the librarian, Mr. Raines, who said he would tell Plaintiff of the Defendant's decision. *Id.*

In his affidavit, Defendant Rhodes explains the factors he considered in reversing his decision to allow Plaintiff to retake the examination:

> The only factors involved in my decision to not permit [Plaintiff] Bucklon to have another opportunity to take the test were Buckon's [sic] failing score, his actions, and his failure to demonstrate a sincere desire to perform his duties in a reasonable and respectful manner. I was convinced that he was not willing to take the initiative necessary to become a part of the work force in the law library

>as an inmate law clerk.  His demeanor, conduct, and the fact that he failed to take the test seriously, as demonstrated by having not availed himself of the use of the time allotted to take the test and to use the available resources to do so, convinced me that he should not be given another opportunity to take the test.

Ex. D.  "No personal or racial consideration or factor entered into" the decision to not allow Plaintiff to retake the examination.  *Id.*  There is no right created by rule or otherwise to retake the examination after having once failed it.  *Id.*  The opportunity to retake the exam is given at Defendant's discretion.  *Id.*

Defendant Rhodes further testified in his affidavit that only five other inmate law clerk trainees have been given the opportunity to retake the final examination after having failed it the first time.  *Id.*  Two of those inmates were white and three were black.  *Id.*  They were allowed to retake the test because of "their demonstration of initiative, attitude, and desire to study and work in the law library."  *Id.*

Supporting Defendant's affidavit is the affidavit of librarian Michael Raines.  Ex. E.  Mr. Raines was present when Defendant gave the certified law clerk exam to Plaintiff and Mr. Raines "observed the short period of time Inmate Bucklon took to complete the test."  *Id.*  Mr. Raines was present when Plaintiff's examination was graded and saw that Plaintiff did not pass the exam.  *Id.*  Mr. Raines was present when Defendant Rhodes indicated he would allow Plaintiff to retake the exam.  *Id.*  Defendant later informed Mr. Raines that he was not going to allow Plaintiff "to retake the examination based on his failing grade and that he had ample opportunity to study for the examination and based on his observation that inmate Bucklon did not appear to be diligent in his work performance in the law library."  *Id.*  Mr. Raines also stated that his own experience with Plaintiff left him with the opinion that although Plaintiff completed

his work assignments "in the law library, he exhibited a reluctance to spend any remaining time in law library job related duties and exhibited a lack of self motivation desired in a certified inmate law clerk." *Id.*

Certified inmate law clerks "must have successfully completed the Department of Corrections' law clerk training program." Ex. F; FLA. ADMIN. CODE R. 33-501.301(10)(a)3. This category of law clerk assists other inmates in conducting legal research, preparing legal documents and legal mail, and assisting with "administrative actions filed with the Florida Parole Commission or the Florida Bar, and inmate grievances filed with the Department of Corrections." *Id.* To be qualified as a certified law clerk, an inmate must have a high school diploma or GED, have sufficient time remaining on his sentence to complete the training and perform work, have a good record of institutional adjustment, and "[d]isplay good character without abusing the authority of the position, a willingness to cooperate with others, and the ability to perform the general duties of a law clerk, including good oral and written communication skills, good comprehension and intelligence." *Id.*; FLA. ADMIN. CODE R. 33-501.301(10)(d). Various training requirements are specified by FLA. ADMIN. CODE R. 33-501.301(10)(f[4]), but in general, the inmate must complete a legal research training program, attend a law clerk training seminar, complete writing assignments and practice exercises, and receive "a passing score (80%) on the law clerk training seminar's final examination." *Id.* "Any inmate who fails to pass the final examination, who does not demonstrate possession of good written communication skills, or who demonstrates

---

[4] Subparagraph "f" of this rule is misprinted without parentheses, but it is clear that this intended to have been in parentheses.

incompetence as defined in section (10)(i)(7.) of this rule, shall be immediately removed from his work assignment in the law library." *Id.*

**Analysis**

Plaintiff's claims are based on the equal protection clause. Doc. 14. Defendant has argued in the summary judgment motion that Plaintiff did not suffer a due process violation, (doc. 27, p. 4), but the complaint does not present such a claim. The complaint is read as presenting only an equal protection claim. A due process claim would fail. Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986) (holding that an inmate has no "property interest in his or continuation as a law clerk."). Plaintiff concedes this issue. Doc. 33, p. 5.

> The lack of entitlement to a particular privilege does not free prison administrators to grant or withhold the privilege for impermissible reasons. The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe.

Adams v. James, 784 F.2d at 1080.

Thus, despite Plaintiff's lack of a due process interest in retaining a job as a law clerk, Plaintiff is protected by the Fourteenth Amendment and may not be removed or prevented from obtaining law clerk certification based on racial animus. "Under the Equal Protection Clause, prisoners have a right to be free from racial discrimination." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding that inmate provided sufficient evidence to withstand summary judgment on his retaliation and racial discrimination claims).

To prevail on his equal protection claim, Plaintiff must first demonstrate "that he is similarly situated with other prisoners who received" more favorable treatment, which

in this case, would mean that other prisoners were given an opportunity to retake the law clerk certification examination. If there is sufficient evidence on that point, Plaintiff must then establish that the Defendant "engaged in invidious discrimination against him based on race, religion, national origin, poverty or some other constitutionally protected interest." Damiano v. Florida Parole and Probation Com'n, 785 F.2d 929, 932-33 (11th Cir. 1986)(citations omitted); *see also* Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001).

Here, Plaintiff has not come forward with evidence to demonstrate the first element of his claim, that other inmates similarly situation were treated more favorably. Defendant presented evidence showing that both white and black inmates were given an opportunity to retake the exam. This is fatal to Plaintiff's claim.

Moreover, there is no evidence to support the second element of the claim either because the only evidence before the Court is that the decision to retract the offer to allow Plaintiff to retake the exam was based on observations of Plaintiff's conduct. Those observations led Defendant to conclude that Plaintiff did not show sufficient self-initiative and lacked the desire to work in the law library (as opposed to socializing in the library). Further, Defendant's observation that Plaintiff was rude to the librarian weighed against allowing Plaintiff to retake the examination. These are valid and non-discriminatory reasons.

Accordingly, there is no evidence to support Plaintiff's claim that racial discrimination was the reason Plaintiff was not allowed to retake the law clerk certification examination. Because there is no evidence of any factual disagreement, and because the facts are so one-sided in Defendant's favor, the motion for summary

judgment should be granted.  Defendant prevails as a matter of law.  Because Plaintiff did not establish the violation of a constitutional right, there is no need to consider Defendant's qualified immunity defense.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (noting the first step is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.").

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 27, be **GRANTED** and judgment entered in Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on June 27, 2005.

        s/     William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**